Filed 6/4/13  P. v. Klein CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>DOUGLAS WAYNE KLEIN,<br><br>　　Defendant and Appellant. | F064628<br><br>(Super. Ct. No. 1412323)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Stanislaus County.  John D. Freeland, Judge.

Michael L. Pinkerton, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Jeffrey Grant, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]　　Before Cornell, Acting P.J., Gomes, J. and Peña, J.

Defendant and appellant Douglas Wayne Klein contends the trial court prejudicially erred in suggesting to the deadlocked jury that it might find helpful, among other things, asking for a readback of any trial testimony requested by any juror. We conclude the court's comments were neutral and did not intrude into the jury's deliberations. Accordingly, we affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

A jury found defendant guilty of one count of continuous sexual abuse of a child (Pen. Code, § 288.5, subd. (a)) and found that defendant engaged in substantial sexual conduct with his preteen victim. (See Pen. Code, § 1203.066, subd. (a)(8).) The court sentenced him to the lower term of six years in prison.

At the trial, the jury sent a note out to the judge after it had deliberated for approximately five hours, reporting that "we cannot come to agreement on the first charge [i.e., the continuous sexual abuse charge]. We are not in agreement to move on [i.e., to lesser included offenses]." The court conferred with counsel and called the jury back into the courtroom.[1]

The court advised the jury: "[W]hat the Court has found is that sometimes a lunch break or an evening recess is helpful in the jury focusing on the issues that they need to focus on. Sometimes it's not helpful. I think what would be best, given the amount of time invested in this case, is if you folks come back tomorrow to continue your deliberations. [¶] … There were several witnesses that testified. There's been no request for read back. Is there any -- do any of you feel that there is any witness read back that might be helpful in discussing the issues in the case?" A juror replied, "Possibly," and identified the victim (identified as Jane Doe) as the witness in question.

---

[1]     Defense counsel indicated that he preferred the court ask the jury whether coming back the next day "would make a difference or if they're hopelessly deadlocked." The court indicated that would not be productive, since the jury's note already informed the court the jury felt it was deadlocked.

The court then asked whether anyone on the jury had "a difficulty understanding a particular instruction and perhaps further instruction by the Court might be helpful? Or is this strictly a witness testimony issue?" Another juror responded: "I feel that we understand the court proceedings you read for us." The court concluded: "I don't want to get involved in your deliberations. It's not my duty or job to tell you how to deliberate. [¶] If one of the jurors feels that a particular read back would be helpful, I would ask that you identify tomorrow for us in a jury note the name of the witness and the -- if you can, if you can pin down the areas of testimony because Jane Doe obviously testified for -- I think it was a couple hours at least. And it may be that you're not able to narrow it down. So if that's the case, that's fine. But I would … ask that a note be presented to the Court through the bailiff so that we have a better idea of what is being requested." The court ordered the jury to return the next day at 9:30 a.m.

At 9:50 a.m., the jury sent out a note asking "to have Jane Doe's testimony read back to us." The court indicated its approval on the note and presumably the testimony was read back. After breaking for lunch, the jury returned its verdict at 2:26 p.m.

## DISCUSSION

Defendant acknowledges that "[a]t first blush it might appear that the trial court's inquiry and response regarding testimony read back was neutral and helpful. However, given the facts of this case, the court abused its discretion in using this strategy … [because] the court essentially suggested to the jury [it] should focus its deliberations on the words spoken in court rather than the attendant critical factors such as demeanor. This amounted to an unwarranted intrusion into the jury's deliberative process" since the jury had not asked for a readback of testimony.[2]

---

[2] We note that defendant's proposed rule, that a readback of testimony improperly focuses the jury on "the words" and not the "attendant critical factors such as demeanor," would effectively bar all readbacks. Reading back testimony is not only specifically authorized by statute (see Pen. Code, § 1138), it is an established part of state and federal

The trial court is permitted to give guidance to the jury concerning its deliberations so long as the court's commentary is fair and "does not effectively control the verdict." (*People v. Rodriguez* (1986) 42 Cal.3d 730, 768.) When the jury has announced it is deadlocked, it is within the court's broad discretion to determine whether, under Penal Code section 1140, "there is no reasonable probability that the jury can agree" on a verdict. (42 Cal.3d at p. 775.) Such a determination is to be made "at the expiration of such time as the court may deem proper." (Pen. Code, § 1140.) In some cases, appellate courts have held that "the trial court, by insisting on further deliberations, expressed an opinion that a verdict should be reached" (42 Cal.3d at p. 775), thereby "displacing the jury's independent judgment 'in favor of considerations of compromise and expediency.'" (*Ibid*.) In the present case, however, the court did not insist the jury reach a verdict, nor did it insist the jury listen to a readback of certain—or, indeed, any—testimony. It merely advised the jury that an overnight break in deliberations or a readback of testimony was sometimes helpful to juries in the court's experience; but the court also added that "Sometimes it's not helpful," and left the choice to have testimony read back up to the jury. In sum, the court's statements in this case fell far short of coercive statements previously found to constitute error. (See *ibid*.; see also *People v. Bell* (2007) 40 Cal.4th 582, 616-617.)

Defendant contends that if the court permitted the jury to hear a reread of the victim's testimony fairness required a reread of defendant's testimony as well. He cites for this proposition *United States v. De Palma, supra,* 414 F.2d at p. 396. In that case, however, the appellate court was discussing the actions of a trial court in refusing to read back the testimony of one of the witnesses; the court was speculating about the reasons a

---

trial practice. (See *United States v. De Palma* (9th Cir. 1969) 414 F.2d 394, 396 [decision whether to permit readback of testimony "lies almost exclusively in the good judgment of the judge presiding"].)

trial judge might decide a readback of testimony of a witness could unduly emphasize that testimony in a particular case. (*Ibid*.) The appellate court did not adopt or suggest a rule that would require a balanced readback in every case, noting instead that such a rule would make trials "almost endless." (*Ibid*.) *De Palma* provides no guidance in the circumstances of the present case.

## DISPOSITION

The judgment is affirmed.